# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

MELINDA YPARREA, and AMERICANA
PRODUCTS COMPANY, INC., d/b/a
AMERICAN PRODUCTS COMPANY, INC.,

      Plaintiffs,

v.                                        Case No. 3:10cv104/RV/EMT

TWIN CITIES WHOLESALE, INC., and
MARK REISDORF,

      Defendants.
_____/

## ORDER

Pending is the defendants' motion to quash service of process and dismiss the complaint (doc. 5-5). The plaintiffs have filed a response in opposition.

## I. Background

The following facts are taken largely from the plaintiffs' complaint, and they are assumed true for purposes of this order.

At all times relevant to this case, plaintiff Melinda Yparrea was a resident of Santa Rosa County, Florida. Her business, plaintiff Americana Products Company, Inc., was a Florida corporation doing business in Santa Rosa County. Mark Reisdorf is the principal of Twin Cities Wholesale, Inc. ("Twin Cities"), a foreign corporation located in Minnesota. In early May 2006, Reisdorf (either personally or on behalf of Twin Cities) entered into an agreement to purchase $203,168.95 worth of "products" from the plaintiffs.[1] The defendants took possession of the items on or

---

[1] The complaint is silent with respect to the products at issue, but, according to an invoice attached to the complaint, the defendants agreed to purchase various miscellaneous items in bulk, such as lapel pins, stickers, bracelets, and hair braids.

about May 5, 2006, but did not pay for them. Several years later, on January 30, 2009, the plaintiffs filed suit against the defendants in the Circuit Court in and for Santa Rosa County, Florida, alleging (i) breach of contract; (ii) fraud; and (iii) civil theft. Reisdorf (both individually and as a corporate representative of Twin Cities) was served with process in Wisconsin 401 days later, on Sunday, March 7, 2010. The defendants thereafter removed the case to this federal court on the basis of diversity jurisdiction. Prior to removal, the defendants filed a motion to quash and dismiss in state court, and the motion carried with the case.[2]

## II. Discussion

The defendants raise several arguments in support of their motion. They move to quash service of the complaint on the grounds that, under Florida law, it was (i) untimely, and (ii) fell "under protection of Sunday." Assuming, arguendo, that the service was proper, they next move to dismiss on the ground that the complaint fails to allege sufficient facts to support personal jurisdiction over them.

With respect to the motion to quash, the defendants first contend that the complaint was untimely because it was served 401 days after it was filed. Rule 1.070(j) of the Florida Rules of Civil Procedure provides: "If service of the initial process and initial pleading is not made upon a defendant within 120 days after filing of the initial pleading directed to that defendant, the court . . . shall dismiss the action without prejudice or drop that defendant as a party." The rule goes on to state, however, that "if the plaintiff shows good cause or excusable neglect for the failure [to serve the defendant within 120 days], the court shall extend the time for service for an appropriate period." In response to defendants' motion, the plaintiffs represent that they made diligent efforts to locate Reisdorf after the complaint was initially filed, but they were not able to find him and effectuate service until March

---

[2] The law of Florida applies to this diversity case. See William Penn Life Ins. Co. of New York v. Sands, 912 F.2d 1359, 1361 (11th Cir. 1990).

*Case No. 3:10cv104/RV/EMT*

7, 2010, when they discovered for the first time that he was living in Wisconsin.[3] Based on plaintiffs' representations, I find that they have established good cause or excusable neglect for failing to timely serve the defendants.

Moreover, even if the plaintiffs failed to establish good cause or excusable neglect, dismissal for failure to serve under Rule 1.070(j) is left to my discretion; and, on the particular facts of this case, I would not be inclined to dismiss on that basis. On this point, Greif v. Jupiter Medical Center, Inc., 2008 WL 2705436 (S.D. Fla. 2008) is instructive. The plaintiff in that case, as in the case sub judice, filed a complaint in state court and then failed to serve defendants within 120 days. After the plaintiff served the complaint, the defendants removed the case to federal court and moved to dismiss as untimely under Rule 1.070(j). The district court held that the plaintiff did not show good cause or excusable neglect. Id. at *2. Nevertheless:

> …the Court [is not] required to dismiss the case without prejudice; instead, it is a matter left to the Court's discretion. [Pixton v. Williams Scotsman, Inc., 924 So.2d 37, 39 (Fla. 5th DCA 2006)]. Despite Defendants' request for dismissal, the Court declines to follow that approach. The Court can find no prejudice to Defendants that warrants dismissal. Nor would the task of judicial administration be served by dismissing this case. In all likelihood, a dismissal without prejudice would simply result in Plaintiff re-filing this case, an act that would tax judicial resources. Finally, nothing in the record suggests that Plaintiff or Plaintiff's counsel engaged in any wrongdoing justifying dismissal.

I agree with this result. The defendants have not argued (let alone shown) that they have been prejudiced by the untimely service or that the plaintiffs have engaged in any wrongdoing. Nor would the interests of judicial administration be served by dismissal. Lastly, and perhaps most importantly (although the plaintiffs

---

[3] It appears from the complaint that the plaintiffs originally believed Reisdorf was residing in Minnesota.

*Case No. 3:10cv104/RV/EMT*

have not raised the argument), if dismissal were granted without prejudice --- and if the plaintiffs subsequently attempted to re-file --- it appears that their claims arising out of a breach of contract that occurred on or about May 5, 2006, will be barred by the applicable four-year statute of limitation. See Fla. R. Civ P. 1.070 (explicitly stating that a dismissal under this rule "shall not operate as an adjudication on the merits") (emphasis added); see also, e.g., Sly v. McKeithen, 27 So.3d 86, 88 (Fla. 1st DCA 2009) ("[b]ecause the statute of limitations had run . . . , the trial court abused its discretion in granting the motion to dismiss," even in the absence of good cause or excusable neglect under Rule 1.070); Roberts v. Stidham, 19 So.3d 1155 (Fla. 5th DCA 2009) (explaining that "Rule 1.070(j) is designed to be a case management tool, not an additional statute of limitations cutting off the liability of a torfeasor"); Chaffin v. Jacobson, 793 So.2d 102 (Fla. 2d DCA 2001) (holding it is an abuse of discretion to not extend period of time for service when the statute of limitations has run); Nationsbank, N.A. v. Ziner, 726 So.2d 364, 367 (Fla. 4th DCA 1999) (holding same because dismissal after statute of limitations has run effectively adjudicates complaint on the merits in contravention of Rule 1.070(j)). For these reasons, the motion to quash service of the complaint as untimely must be denied.

As for the Sunday service argument, it is true, as the defendants point out, that Florida prohibits service of process on Sunday. See Fla. Stat. § 48.20. However, Reisdorf was not served in Florida, so I need not attempt to analyze whether, and how, that prohibition may be enforced in this case. He was served by law enforcement in Wisconsin, which, as the plaintiffs point out, does not have a statutory prohibition on Sunday service. See Wis. Stat. §§ 801.10-14. Accordingly, the motion to quash on this basis must be denied as well.

That leaves defendants' motion to dismiss the complaint for lack of personal jurisdiction. In order to subject foreign defendants to jurisdiction in Florida, a two-

prong test must be satisfied: (1) the defendants must have performed one or more of the acts specified in the Florida Long-Arm statute, Fla. Stat. § 48.193, and (2) the defendants must otherwise have sufficient "minimum contacts" with Florida; that is, they must have purposefully availed themselves of the privilege of conducting business in the state (thereby invoking the benefits and protections of its laws), so that hailing them into a Florida court will not offend due process and traditional notions of fair play and substantial justice. See Venetian Salami Co. v. Parthenais, 554 So.2d 499, 500-01 (Fla. 1989); Marsh Supermarkets, Inc. v. Queen's Flowers Corp., 696 So.2d 1207, 1208 (Fla. 3d DCA 1997); see generally International Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

    The defendants first contend that plaintiffs cannot satisfy Florida's Long-Arm statute because "not one of the allegations made in plaintiff's complaint falls under the acts enumerated in § 48.193" (emphasis original). I disagree. Section 48.193 sets forth various acts that constitute conduct falling under the Long-Arm statute, including: "Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(g). The plaintiffs contend, inter alia, that defendants breached a contract that was to be performed in Florida (payment for the goods).[4] That is enough to satisfy the Long-Arm statute.

---

[4] It is not immediately clear if payment under the contract was to be made in Florida. However, in the absence of any express designation to the contrary, I must assume it was. O'Brien Glass Co. v. Miami Wall Systems, Inc., 645 So.2d 142, 144 (Fla. 3d DCA 1994) ("Since it is not clear from the record whether the parties reached agreement as to where O'Brien was to make payment, the law requires us to presume that payment is to be made where the payee resides."); Vacation Ventures, Inc. v. Holiday Promotions, Inc., 687 So.2d 286, 289 (Fla. 5th DCA 1997) (noting that "it is well settled that the legal presumption that a debt is to be paid at the creditor's place of business in the absence of an express designation of the place of payment is sufficient to satisfy the language in 48.193(1)(g) that refers to contractual acts 'required' to be performed in Florida.").

See, e.g., Stewart v. Julana Development Corp., 678 So.2d 1385, 1388 (Fla. 3d DCA 1996) (failure to perform under contract to be performed in Florida satisfies Section 48.193(1)(g)); International Computer Solutions, Inc. v. St. James Club Antigua, 561 So.2d 1202, 1203 (Fla. 3d DCA 1990) (same); Pellerito Foods, Inc. v. American Conveyors Corp., 542 So.2d 426, 428 (Fla. 3d DCA 1989) (same).[5]

Because the plaintiffs have adequately pled an act under Florida's Long-Arm statute, the question becomes: do the defendants otherwise possess the minimum contacts with Florida to justify subjecting them to suit in the state? The plaintiffs allege that minimum contacts exist because the defendants "breached a contract by failing to perform acts required to be performed in Florida" and, therefore, "the defendants purposely took advantage of the privilege of conducting business in Florida." However, while the breach of contract in Florida is sufficient to satisfy the Long-Arm statute analysis, "the mere failure to pay money due [under a contract] in Florida is not enough to satisfy constitutional minimum contacts analysis." Stewart, supra, 678 So.2d at 1388 n.4; accord Reinauer v. Greenman Advertising Assocs., Inc., 503 So.2d 975, 977 (Fla. 4th DCA 1987) (minimum contacts not satisfied by the plaintiffs relying "on the language of its invoice and appellant's failure to make payments in Florida as required by the invoice").

The Supreme Court of the United States has expressly stated that: "If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home

---

[5] To the extent defendants might be suggesting that the plaintiffs have not made a showing under the Long-Arm statute because plaintiffs did not specifically mention Section 48.193(1)(g) in their complaint, that argument is unavailing. See Banco Inversion, S.A. v. Celtic Finance Corp., S.A., 907 So.2d 704, 708 (Fla. 4th DCA 2005) ("We recognize that although the complaint alleges breach of contract, it does not explicitly reference section (1)(g). However, this is not significant where the complaint otherwise alleges sufficient jurisdictional facts.").

*Case No. 3:10cv104/RV/EMT*

forum, we believe the answer clearly is that it cannot." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (emphasis original); see also, e.g., Alan Richard Textiles, Ltd. v. Vertilux, Inc., 627 So.2d 529, 530 (Fla. 3d DCA 1993) ("a contract alone is not sufficient to establish minimum contacts with the forum state so as to allow an out-of-state party to be sued in the forum state"). "Since Burger King was decided, several Florida district courts of appeal have held that an out-of-state resident did not subject himself to the jurisdiction of the Florida Courts merely because contractual payments were to be made in Florida." Pacific Tel. and Tel. Co. v. Geist, 505 So.2d 1388, 1391 n.2 (Fla. 5th DCA 1987); Segal v. Russell, 553 So.2d 346, 347 (Fla. 4th DCA 1989) (recognizing same); deMco Techs., Inc. v. C.S. Engineered Castings, Inc., 769 So.2d 1128, 1130 (Fla. 3d DCA 2000) (stating "Florida courts have repeatedly found the nonpayment of a debt, whether pursuant to the terms of a promissory note or for the purchase of goods, without more, to be insufficient to sustain personal jurisdiction over a nonresident defendant."); Bruzzone Roldos v. Americargo Lines, Inc., 698 So.2d 1368, 1369 (Fla. 3d DCA 1997) ("this Court has consistently found that mere purchase of goods within the State of Florida by a nonresident, without more, is insufficient to satisfy the due process requirement of minium contacts."); O'Brien Glass Co. v. Miami Wall Systems, Inc., 645 So.2d 142, 144 (Fla. 3d DCA 1994) ("The mere fact that O'Brien ordered goods from a Florida corporation [for which it later refused to pay] does not render it amenable to suit in Florida."); Alan Richard Textiles, supra, 627 So.2d at 530 (ordering products from a Florida corporation is insufficient to establish minimum contacts); Payless Drug Stores Northwest, Inc. v. Innovative Clothing Exchange, Inc., 615 So.2d 249 (Fla. 3d DCA 1993) (holding that non-resident clothing purchaser whose contact with Florida consisted of placing two orders in Miami, with payment to be made thereafter in Miami, did not have sufficient minimum contacts with Florida so as to

allow the resident clothing seller to bring lawsuit in Florida for nonpayment); <u>AM Sampling, Inc. v. White Lab., Inc.</u>, 564 So.2d 590, 592 (Fla. 5th DCA 1990) ("The fact that a Florida resident has contracted with a nonresident is insufficient in and of itself to establish automatically the minimum contacts necessary to confer personal jurisdiction on the nonresident"). As the Supreme Court of Florida made clear in <u>Venetian Salami Co.</u>, <u>supra</u>, 554 So.2d at 503: "[W]e do not believe that the mere failure to pay money in Florida, standing alone, would suffice to obtain jurisdiction over a nonresident defendant."

In light of the established case law above, it is clear that the defendants' alleged failure to pay money owed under the contract in Florida is insufficient, by itself, to exercise jurisdiction over them. Yet, that is the only jurisdictional basis alleged in the complaint. On this basis, therefore, the defendants' motion is well founded. However, I will give plaintiffs an opportunity to amend their complaint to properly allege jurisdiction. <u>See</u>, <u>e.g.</u>, <u>Consoli v. Architectural Concepts, Inc.</u>, 578 So.2d 905 (Fla. 2d DCA 1991) (appellants entitled to dismissal based on appellee's failure to plead a basis for personal jurisdiction over them, but noting that "appellee should be given the opportunity to amend the complaint to allege long arm jurisdiction over the nonresident appellants").

**III. Conclusion**

For the reasons stated above, the defendants' motion to quash and dismiss (doc. 5-5) is DENIED, for the time being. The plaintiffs shall have fourteen (14) days in which to file an amended complaint setting forth additional facts, if any, sufficient to allow this court to exercise personal jurisdiction over the defendants, in the absence of which the defendants' motion to dismiss for lack of jurisdiction will be GRANTED.

DONE and ORDERED this 17th day of May, 2010.

                                     <u>/s/ Roger Vinson</u>
                                     ROGER VINSON
                                     Senior United States District Judge